UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROLLER BEARING COMPANY | * | |
| OF AMERICA, INC., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:20-cv-10889-IT |
| | * | |
| RAYTHEON COMPANY, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

August 3, 2022

TALWANI, D.J.

Roller Bearing Company of America, Inc. ("RBC") brings this lawsuit against Raytheon

Company ("Raytheon") alleging that Raytheon breached a nondisclosure agreement with RBC

and misappropriated RBC's trade secrets in violation of state and federal law. Specifically, RBC

alleges that Raytheon distributed RBC's trade secrets and proprietary information to a third

party, Multicut Denmark A/S ("Multicut Denmark"), without informing Multicut Denmark that

the information was the property of RBC and without taking proper steps, under the

nondisclosure agreement with RBC, to ensure that Multicut Denmark did not further disseminate

the information without proper protections in place. As RBC alleges, Raytheon asserted

ownership over RBC's trade secrets and proprietary information and expressly authorized

Multicut Denmark to disseminate the information without limitation or protection. RBC alleges

that Multicut Denmark thereafter disseminated the information to Multicut North America, Inc.

("MNA"), and to RBC's competitors, causing RBC to suffer financial injury.

Pending before the court is RBC's Motion to Compel [Doc. No. 95], seeking from

Raytheon the production of four documents from 2018 and testimony of two witnesses

concerning the documents. Raytheon opposes the motion, asserting a privilege based on a joint

defense or common interest agreement. RBC responds that no such agreement existed prior to 2020, and in any event, that Raytheon waived any such privilege based on the disclosure of another document from 2018.

For the following reasons, RBC's <u>Motion to Compel</u> [Doc. No. 95] is GRANTED.

## I.    Background

### A.    *RBC's Allegations Regarding Events Prior to July 2018*

As alleged by RBC, in 2014, Raytheon and RBC entered into an agreement obligating each party to retain the confidentiality of the other party's respective trade secrets. Am. Compl. ¶ 13 [Doc. No. 21]. Pursuant to that agreement, in 2015, Raytheon provided RBC plans for a rod end bearing product, and RBC then created and provided to Raytheon specialized new and unique rod end bearings. <u>Id.</u> at ¶¶ 17-21. RBC retained ownership rights to the drawings and specifications of the rod end bearings. <u>Id.</u> at ¶ 22.

RBC alleges further that Raytheon provided Multicut Denmark in 2016 with a set of drawings and specifications, which incorporated RBC's trade secrets, without taking adequate steps to protect RBC's confidential and proprietary information and trade secrets. <u>Id.</u> at ¶ 34. In 2017, Multicut Denmark and MNA (collectively, "Multicut") engaged RBC in negotiations for RBC to be the exclusive supplier of its proprietary rod end bearings for the Raytheon project at issue. <u>Id.</u> at ¶ 40. In May or June 2017, Multicut Denmark sent Raytheon drawing's incorporating RBC's design and specifications and trade secrets to RBC's competitors. <u>Id.</u> at ¶ 50. In July 2017, RBC contacted Multicut's CEO Frank Dühring by email "to inform him that RBC had discovered [Multicut] had improperly distributed RBC's trade secrets contained in . . . Raytheon['s] drawings and specifications . . . ." <u>Id.</u> at ¶ 54. Dühring forwarded Raytheon a copy of this email, as well as his response to RBC in which he denied that the Raytheon drawings contained any trade secrets belonging to RBC. <u>Id.</u> at ¶ 55. These communications suggest that

Raytheon knew, by July 2017, that RBC was claiming rights to trade secrets incorporated by Raytheon into its drawings and specifications and RBC was asserting that Multicut had distributed these trade secrets improperly. Id.

B. *RBC's Lawsuit Against MNA and Subsequent Communications Prior to an Action Being Filed Against Raytheon*

In June 2018, RBC filed an action in Connecticut state court against MNA. See June 28, 2018 State Ct. Compl., Roller Bearing Company of America, Inc. v. Multicut North America, Inc., 3:18-cv-01212-SRU (D. Conn. July 23, 2018) [#1-1]. MNA promptly removed the action to the United States District Court for the District of Connecticut. See Notice of Removal, Roller Bearing Company of America, Inc. v. Multicut North America, Inc., 3:18-CV-01212-SRU [#1] (the "Connecticut Action").

1. Disclosed Communications

After RBC commenced the Connecticut Action, Raytheon and Multicut exchanged emails and documents related to RBC's claims that have been disclosed in discovery. Multicut's CEO Dühring inquired on October 4, 2018, about Raytheon's drawings for sleeve and rod end bearings, seeking written confirmation from Raytheon that (i) Raytheon is the rightful owner of the design of the part on the drawings, and that the drawing is proprietary to Raytheon and (ii) Multicut can ask any source for this parts as long as they meet the requirements on the drawing and that the suppler/manufacturer is not on the OFAC and SDN list. Ex. 4 [Doc. No. 92-4] ("Bealer/Dühring E-mails"). On October 25, 2018, Ian Bealer responded, in relevant part, that Raytheon had reviewed the sleeve and rod end bearing drawings and confirmed that both drawings contain only Raytheon Proprietary data and data available in publicly available design standards. Id.

3

2.   Undisclosed Communications

As set forth on Raytheon's privilege log, Bealer and Dühring exchanged two other e-mails, dated October 5, 2018, and October 25, 2018, each with a PowerPoint attachment, concerning Raytheon's technical review of the rod end bearing at issue ("2018 Logged Documents").[1] Raytheon asserts that the 2018 Logged Documents contain analysis performed by Bealer at the request of Raytheon's in-house counsel in a joint defense effort to respond to RBC's allegations.

C.   *RBC's Lawsuits Against Raytheon and Multicut Denmark and the Written Joint Defense Agreement*

In May 2020, RBC initiated a second suit in Connecticut, this time naming Multicut Denmark.[2] RBC also initiated the action in this court against Raytheon.

On July 23, 2020, Raytheon and Multicut executed a written joint defense agreement. See January 19, 2022 Day Pitney Letter, Ex. 2 [Doc. No. 92-2].

In September 2020, RBC sought to transfer the instant action to Connecticut, arguing that transfer was warranted in light of "the complete overlap of RBC's claims in all three actions and the inextricably intertwined facts and evidence . . . ." Pl.'s Mem. 6 [Doc. No. 29]. In opposing transfer, Raytheon asserted:

> the present action and the District of Connecticut cases do not involve the same operative facts. As noted above, the gravamen of this action concerns Raytheon's supposed assertion of ownership of the alleged trade secret and disclosure to others. The Multicut cases on the other hand concern Multicut's subsequent interactions with RBC and other vendors, in which Raytheon was not involved. At

---

[1] These two emails and two PowerPoint attachments are the only documents withheld by Raytheon based on the common interest privilege. Raytheon states that they present in duplicates, and therefore they appear nine times in Raytheon's privilege log. Raytheon Privilege Log, Ex. 10 [Doc. No. 92-10].

[2] The Connecticut court subsequently consolidated the two actions pending there. Order, Roller Bearing Company of America, Inc. v. Multicut North America, Inc., 3:18-CV-01212-SRU [#68].

most, the cases have some adjacent facts on the periphery, but do not arise out of the same transaction or occurrence. Indeed, none of the allegations in the Complaint or in the Motion discloses any transaction that involved all three of Raytheon, RBC, and Multicut.

Opp'n 11 [Doc. No. 35].

     D. *Discovery in the Connecticut and Massachusetts Actions*

In discovery in the Connecticut Action, Multicut produced the Bealer/Dühring Emails. Neither Multicit nor Raytheon has sought to claw back or assert any privilege as to the Bealer/Dühring Emails.

During the deposition of Raytheon's 30(b)(6) witness Ian Bealer, Bealer testified that he understood that an implied joint defense agreement existed as of 2017 when litigation was first mentioned. See Bealer Dep. Tr. at 162:7-164:8 [Doc. No. 92-1]. Two weeks after Bealer's deposition, Raytheon's counsel sent a letter to RBC's counsel "to correct the date of formation for the oral informal [joint defense] agreement to 2018 . . . ." January 19, 2022 Day Pitney Letter [Doc. No. 92-2].

Thereafter, Raytheon's other 30(b)(6) witness, Stephen Bliss, testified about communications he had with Multicut in July 2017.[3]

Subsequently, RBC deposed Multicut's 30(b)(6) witness, Frank Dühring, regarding the joint defense agreement between Raytheon and Multicut. Dühring followed his attorney's instructions to not answer questions about his conversations with Raytheon in 2017 about RBC's claims based on a joint defense privilege.

---

[3] Raytheon contends that this testimony concerned only non-privileged communications. Opp'n 5 [Doc. No. 104].

## II.     Discussion

RBC contends that the inconsistent positions of Raytheon and Multicut and their failure to disclose sufficient evidentiary basis to establish an implied joint defense agreement results in no enforceable joint defense agreement before execution of the written joint defense agreement in July 2020. Raytheon states that an implied joint defense agreement existed between it and Multicut as early as 2017. Raytheon further asserts that it entered an oral agreement with Multicut after RBC brought suit in the District of Connecticut in 2018 claiming that Multicut circulated Raytheon's design plans allegedly containing RBC's proprietary information. Raytheon argues that, as a result of the Connecticut Action, Raytheon and Multicut had a common interest in determining what was included in Raytheon's vendor item control drawings. Raytheon contends that Raytheon and Multicut shared the 2018 Logged Documents in October of 2018 pursuant to their oral agreement, such that the 2018 Logged Documents and related oral communications were made in the course of the joint defense effort.

Raytheon's claim of a 2018 "oral agreement" is offered without any supporting evidence of such an agreement. Instead, Raytheon relies on the fact that the 2018 Logged Documents were exchanged after the Connecticut Action was commenced to establish a joint defense agreement between Raytheon and Multicut. Accordingly, the court turns to whether there was an implied joint defense agreement based on the parties' conduct and common interest.

The common interest doctrine[4] is typically understood to apply "[w]hen two or more clients consult or retain an attorney on particular matters of common interest." Cavallaro v.

---

[4] "Common interest" and "joint defense" doctrine carry the same legal significance here and the court uses the terms interchangeably. See Cavallaro, 284 F.3d at 250 ("Whether one refers to [it] as 'common interest,' 'joint defense,' 'joint client,' or 'allied lawyer' doctrines does not change the outcome of this case").

United States, 284 F.3d 236, 249 (1st Cir. 2002) (quoting Weinstein's Federal Evidence § 503.31[1] (J.M. McLaughlin, ed., 2d ed.2002). "In such a situation, 'the communications between each of them and the attorney are privileged against third parties.'" Id. (quoting Weinstein's Federal Evidence, supra, § 503.21[1]). "Similarly, the 'privilege applies to communications made by the client or the client's 'lawyer to a lawyer representing another in a matter of common interest.''" Id. at 249-50 (quoting Weinstein's Federal Evidence, supra, § 503.21[2] (quoting Sup. Ct. Standard 503(b)(3)). "The common-interest doctrine . . . is 'not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party.'" Id. (quoting E.S. Epstein, The Attorney–Client Privilege and the Work–Product Doctrine 168-69, 196 (4th ed. 2001).

"A common interest typically entails an identical, or nearly identical, legal interest as opposed to a merely similar interest." FM Generator, Inc. v. MTU Onsite Energy Corp., 2016 WL 8902603, at *7 (D. Mass. Aug. 25, 2016) (citing FDIC v. Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000)). For the common interest exception to apply, "the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 93 (D. Mass. 2002) (quoting United States v. Bay State Ambulance and Hosp. Rental Serv. Inc., 874 F.2d 20, 28 (1st Cir.1989)). "To qualify for the privilege, the communication must have been made in confidence." Id. (quoting Bay State, 847 F.2d at 28). "While a written agreement is not a prerequisite for invoking the common interest doctrine, parties seeking to invoke the exception must establish that they agreed to engage in a joint effort and to keep the shared information confidential from outsiders." Id.

(internal citation omitted). "The burden of proving the existence of the privilege is on the party asserting the privilege." Bay State, 874 F.2d at 28.

"A joint defense agreement [or common interest agreement] may be . . . inferred by the conduct of the parties." Murphy v. Harmatz, 2016 WL 7104831, at *4 (D. Mass. Dec. 5, 2016) (quoting Rhodes v. AIG Domestic Claims, Inc., 20 Mass. L. Rptr. 491, 2006 WL 307911, at **8- 11 (Mass. Supr. Ct. Jan. 27, 2006) (brackets and emphasis in original)). However, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception." Metro. Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc., 2019 WL 13180449, at *5 (D. Mass. Mar. 15, 2019) (quoting In re Pacific Pictures Corp., 679 F.3d 1121, 1129 (9th Cir. 2012)). The proponent of the privilege must establish "cooperation in fact toward the achievement of a common [legal] objective." Ogden Corp., 202 F.3d at 461.

Here, RBC's lawsuit against MNA did alert Raytheon to the potential claims that RBC might allege against Raytheon, and Raytheon and Multicut's communications in 2018 could easily have been directed towards common defenses. At the same time, MNA's interests diverged from Raytheon, and indeed, MNA's answer to RBC's amended complaint included the affirmative defense that RBC's claims "fail, in whole or in part, because [RBC] seeks relief from actions legally and proximately caused by other person, entities, or forced, over which [MNA] exerted no control and for which it had no responsibility." MNA Answer, Sixth Affirmative Defense, No. 18-cv-01212 [#54]. Without evidence that Raytheon and Multicut agreed in 2018 to defend the case together, the court is unable to find an implied joint defense agreement existed at that time where MNA reserved the right to assert that Raytheon was at fault. While it is certainly plausible that Raytheon and Multicut were working jointly to defend against RBC's claims after RBC initiated the Connecticut Action against MNA, it is equally plausible that

Multicut exchanged information with Raytheon to determine whether to oppose RBC's claims or to bring third-party claims against Raytheon.

In opposing the motion to compel, Raytheon has the burden to establish that a joint defense agreement existed in 2018. The court finds that Raytheon has not met that burden where it relies solely on the inception of a case potentially placing Raytheon and Multicut's interests adverse to one another to establish an implicit agreement between the two.[5]

Accordingly, the court finds that Raytheon has failed to establish that a joint defense agreement existed between Raytheon and Multicut in 2018.

## III.    Conclusion

For the foregoing reasons, Raytheon's Motion to Compel [Doc. No. 95] is GRANTED. The court orders Raytheon to produce the 2018 Logged Documents to RBC by August 10, 2022, and to produce promptly for deposition the appropriate witnesses with knowledge of the creation and subject matter of those documents.

IT IS SO ORDERED.

DATED: August 3, 2022                         /s/ Indira Talwani
                                              United States District Judge

---

[5] Having found that Raytheon has not established the existence of a joint defense agreement in 2018, the court need not determine whether the 2018 Logged Documents were designed to further that effort or whether there was waiver of the privilege. See Bay State, 874 F. 2d at 28.