UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROLLER BEARING COMPANY OF AMERICA, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * | Civil Action No. 1:20-cv-10889-IT |
| RAYTHEON COMPANY, | * * * | |
| Defendant. | * | |

MEMORANDUM & ORDER

January 31, 2024

TALWANI, D.J.

Pending before the court is Plaintiff Roller Bearing Company of America Inc's ("Roller Bearing") Motion for Leave to Disclose Rebuttal Expert [Doc. No. 168]. Roller Bearing seeks to disclose an expert to address:

> the particular types of engineering drawings governed by industry standards put forth by the American Society of Mechanical Engineers ("ASME"), including the term, definition and purpose of "vendor item control drawings" under the ASME standards, (ii) whether engineers in the aerospace industry in general have an understanding of the term, definition and purpose of "vendor item control drawings," and (iii) whether particular drawings meets the requirements under the ASME standards.

Mem. ISO Motion for Leave to Disclose 1 [Doc. No. 169].[1] For the reasons set forth below, Roller Bearing's Motion [Doc. No. 168] is DENIED.

---

[1] ASME defines "vendor item control drawings" as drawings used in the aerospace industry that "provide[] an engineering description and acceptance criteria for *commercial items* or *vendor-developed* items that are procurable from a *specialized segment of industry*." ASME Y14.24-1999 at 24, Decl. of Elizabeth Alquist ("Alquist SJ Decl."), Ex. 27 [Doc. No. 111-27] (italics in original).

I.      **Relevant Background and Procedural History**

Under the operative scheduling order, see Elec. Order [Doc. No. 70], Roller Bearing's trial experts were to be designated and all expert disclosures made by April 8, 2022. Depositions of Roller Bearing's trial experts were to be completed by May 13, 2022. See Elec. Order [Doc. No. 87]. Defendant Raytheon Company's ("Raytheon") trial experts were to be designated by June 3, 2022, and depositions were to be completed by July 15. Id.

On April 8, 2022, Roller Bearing disclosed one expert, Robert Adams. Adams' expert report did not discuss vendor item control drawings or the ASME standard. See Expert Report of Robert Adams, Ph.D. ISO Plaintiff Roller Bearing Company of America, Inc., Alquist SJ Decl., Ex. 24 [Doc. No. 111-24].

On June 3, 2022, Raytheon disclosed Michael Gordon as its trial expert. See Expert Report of Michael Patrick Gordon, PE ("Gordon Rep."), Declaration of Michael P. Gordon ISO Raytheon's Mot. for Summ. J., Ex. 1 [Doc. No. 112-1]. Gordon's expert report discussed the form and function of vendor item control drawings" and concluded that "[i]n reviewing all variants of the Raytheon [] vendor item control drawing, the drawing is clearly a vendor item control drawing . . . and meets the requirements of ASME Y14.24[.]" Gordon Rep. 4 [Doc. No. 112-1]. Gordon's report included a section titled "The Importance of Specifications," in which he described the purpose of standardized drawings in the "highly regulated" aerospace industry. Id. at 3.

Roller Bearing deposed Gordon on June 30, 2022. In his deposition, Gordon was asked whether the ASME standard says that a control drawing cannot contain proprietary information, to which he responded "[n]o, it doesn't say that. But on the same note, everybody is operating from the same playbook. A vendor item control drawing, that is the definition of a vendor item

control drawing." Gordon Deposition Tr. 138:15-139:2, Alquist Decl., Ex. 8 [Doc. No. 179-8]. Gordon continued: "[W]hen you have suggested sources of supply and statements on the drawing that speak to the fact that this isn't a guarantee of continued or future source of supply, those things are pretty self-explanatory." Id. at 139:3-7. Later in the deposition, when asked whether Gordon the ASME standard "was written for engineers to use[,]" Gordon agreed. Id. at 279:9-11.

On September 12, 2022, Raytheon filed its Motion for Summary Judgment [Doc. No. 114]. In his declaration in support of Raytheon's Motion, Gordon stated that "all aerospace engineers should be familiar with ASME Y14.24 standard. Therefore, all aerospace engineers should be familiar with the term, definition, and purpose of a *vendor item control drawing*." Declaration of Michael P. Gordon ISO Raytheon's Mot. for Summ. J. ¶ 4 [Doc. No. 112] (italics in original).

Five months later, Roller Bearing's counsel sent Raytheon's counsel an email stating: "Attached please find the executed undertaking and resume of Mr. David B. Fitzgerald." 2/16/23 Email, Alquist Decl., Ex. 9 [Doc. No. 179-9]. In response, Raytheon's counsel asked whether Fitzgerald would be offering any opinion or testimony for this case; Roller Bearing's counsel explained that "any opinions or testimony from Mr. Fitzgerald would be related [to] ASME drawing standards and their use by those in the aerospace industry." Id. Raytheon's counsel told Roller Bearing that Raytheon would object to any opinions or testimony by Fitzgerald on timeliness grounds and would object to Fitzgerald's access to protected material under the protective order in place. Id.

At a discovery conference in March 2023, Roller Bearing explained that it sought leave to designate Fitzgerald as a rebuttal expert to potentially testify at trial "on the[] issues related to

3

the ASME drawings, and the related issue [of] how those in the aerospace industry understand and have knowledge of those standards." Discovery Conf. Tr. 4:24-5:2, Declaration of Lorey Rives Leddy ISO Pl.'s Mot. to Disclose Rebuttal Expert ("Leddy Decl."), Ex. 2 [Doc. No. 170-2]. Roller Bearing's counsel contended that "there were arguments made in the summary judgment motions that modified and changed some of the arguments that were made in the original expert reports." Id. at 4:10-12. Raytheon objected that the request was untimely and that, in any event, Roller Bearing had known of Raytheon's arguments regarding vendor item control drawings for months. Id. at 5:16-6:14.

The court directed the parties to wait to raise the issue until after the summary judgment motion was decided and that if the motion was denied, the court would then set a briefing schedule to allow resolution of the trial expert issue in advance of trial. Id. at 11:3-11.

On November 3, 2023, the court issued a Memorandum and Order [Doc. No. 159] denying Raytheon's summary judgment motion on all counts. At the initial pretrial conference, the court set a briefing schedule for the trial expert disclosure dispute. Elec. Clerk's Notes [Doc. No. 163]. On December 6, 2023, Roller Bearing filed the pending Motion for Leave to Disclose Rebuttal Expert [Doc. No. 168]. Raytheon opposed the motion [Doc. No. 180].

II.     Discussion

The crux of Roller Bearing's argument is that Raytheon's expert offered new opinions in his summary judgment declaration that were not included in either his report or deposition, and that Roller Bearing now requires a rebuttal expert to address those arguments. Mem. of Law ISO Pl.'s Motion for Leave to Disclose Rebuttal Expert ("Roller Bearing Mem.") 2-3 [Doc. No. 169]. Specifically, Roller Bearing takes issue with Raytheon's argument on summary judgment "that the ASME standards are understood in only one specific way by all engineers in the aerospace

4

industry, thus attempting to impute certain knowledge to [Roller Bearing] employees." Id. at 2. Roller Bearing contends that Gordon's statements in his declaration that all engineers should be familiar with the ASME Y14.24 standard, and thus all engineers should be familiar with the definition and purpose of vendor item control drawings, constituted a "new, expanded opinion" from Gordon. Id. at 6. Consequently, Roller Bearing seeks to offer Fitzgerald as a rebuttal expert on the ASME standards. Id. at 8.

Raytheon counters that the request is futile, untimely and prejudicial. Raytheon Company's Opp. to Pl. Roller Bearing Company of America, Inc.'s Mot. for Leave to File to Disclose Rebuttal Expert ("Raytheon Opp.") 1 [Doc. No. 180]. First, Raytheon contends that Roller Bearing's expert Scott McNeil has already testified that he understood the drawings at issue to be vendor item control drawings, and that Roller Bearing cannot now seek to introduce a rebuttal expert to contradict McNeil's testimony. Id. at 7-8.[2] Second, Raytheon argues that, futile or not, Roller Bearing's request is untimely and Roller Bearing has provided no explanation for why it required five months to locate Fitzgerald and an additional month to seek leave from the court. Id. at 7. Finally, Raytheon contends that, because the parties' motions in limine for the scheduled April trial date are due March 14, 2024, there is insufficient time for Roller Bearing to produce and Raytheon to review a new expert report. Id. at 16.

Under Fed. R. Civ. P. 26(a)(2)(A) and (B), a party must disclose a witness from whom it seeks expert opinion, and if the witness is retained or specially employed to provide expert testimony, must provide a report containing, inter alia, "a complete statement of all opinions the

---

[2] McNeil testified that a vendor item control drawing is defined in an ASME document, that he is familiar with that ASME standard, and that it is an industry-wide standard. See McNeil Deposition Tr. 107:23-108:7, Alquist Decl., Ex. 3 [Doc. No. 179-3], and that he knew that the drawing at issue was a vendor item control drawing, see id. 186:1.

5

witness will express and the basis and reasons for them." Under Fed. R. Civ. P. 26(a)(2)(D), "a party must make [the required disclosures] at the times and in the sequence that the court orders." Absent a court order or stipulation of the parties, a party that intends to offer expert evidence "solely to contradict or rebut evidence on the same subject matter identified by another party" in its disclosures must make the required disclosures "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii).

Where a party fails to provide the required information, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In considering whether a failure was substantially justified or harmless, a court looks to: (1) the history of the litigation; (2) the party's need for the evidence; (3) the party's justification for its late disclosure; (4) the prejudice to the opponent-party were the late disclosure to be permitted; and (5) the late disclosure's impact on the court's docket (the "Macaulay factors"). See Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009) (citing Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)). In general, a trial court has "substantial discretion to make determinations on expert testimony." Cruz-Vasquez v. Mennonite General Hosp., Inc., 613 F.3d 54, 57 (1st Cir. 2010).

Both parties contend that all factors weigh in their favor. Roller Bearing argues that its untimely disclosure is substantially justified because it requires Fitzgerald's expert testimony to rebut Gordon's "new opinions" offered for the first time on summary judgment "on what aerospace engineers know or should know about the ASME standards and requirements for control drawings." Roller Bearing Mem. 7 [Doc. No. 169]. Roller Bearing asserts that without Mr. Fitzgerald's expert opinion, "the evidence regarding how the ASME standards are understood by 'all aerospace engineers' is entirely one-sided and contradicts the testimony of

several [of] [Roller Bearing's] witnesses who did not have such an understanding of the standards." Id. at 9. Roller Bearing explains that "[a]fter the motion for summary judgment was fully briefed (on November 18, 2022), [Roller Bearing] researched, located, and disclosed (on February 16, 2023) Fitzgerald as a rebuttal expert on the ASME standards," and contends that Roller Bearing thus "proceeded in a reasonable manner, and its untimely disclosure is substantially justified." Id. at 8. It further highlights that (1) it has complied with all prior deadlines in this case; (2) there is ample time for Raytheon to respond to a new expert report before trial; and (3) the new disclosure would not require adjustment of the existing trial schedule. Id. at 8-10.

Raytheon disagrees. It contends that the issue of the function of vendor item control drawings has been central to this case from the start. Raytheon Opp. 7 [Doc. No. 180]. It submits that "[b]y the time fact discovery closed at least four fact witnesses, all of whom were engineers, were asked if they knew what a vendor item control drawing was and two testified as to the requirements of such a drawing and the standard." Id. at 8. Regardless, Raytheon argues, Gordon's expert opinions have remained consistent throughout the litigation. Id. at 7. Raytheon also contends that Roller Bearing has not sufficiently explained why it took five months following Gordon's summary judgment declaration to research and locate Fitzgerald, nor why Roller Bearing waited a month after finding Fitzgerald to move for leave to disclose him. Id. at 12-13. Finally, Raytheon notes that it will be prejudiced should the court allow disclosure because it is unclear how long it will take for Fitzgerald to draft and submit a new report, and Raytheon would have only until the deadline for motions in limine—currently March 14, 2024—to evaluate the testimony and determine whether to file Daubert motions. Id. at 16.

The court finds that the factors either weigh against Roller Bearing's request or are neutral. In particular, Roller Bearing's explanation for the six month delay between Raytheon's filing of Gordon's declaration on September 12, 2022 [Doc. No. 112], which Roller Bearing contends alerted it to the need for rebuttal expert testimony, and Roller Bearing's request to the court to disclose Fitzgerald as a rebuttal expert on March 10, 2023, 3/10/23 Email, Alquist Decl., Ex. 10 [Doc. No. 179-10], is inadequate.

Other factors, too, weigh in Raytheon's favor. For one thing, Roller Bearing's need for the rebuttal evidence is not obvious, and Roller Bearing states it only seeks to call Fitzgerald at trial "if necessary." Mem. ISO Motion for Leave to Disclose 1 [Doc. No. 169]. Additionally, many of Roller Bearing's witnesses, including Scott McNeil, the engineer primarily involved with the drawings in question, have already testified to their knowledge of and familiarity with vendor item control drawings and the ASME standards. Though not designated as experts, their testimony will bear on the question of what Roller Bearing engineers reasonably understood the purpose of the drawings to be.

Moreover, even without a rebuttal expert, Roller Bearing has avenues available to address what it contends is inappropriate expert testimony by Gordon. For instance, Roller Bearing is free to challenge whether Gordon's opinion regarding "all aerospace engineers" satisfies Federal Rule of Evidence 702.

The court finds the fourth and fifth <u>Macaulay</u> factors neutral. While trial in this case is set to begin April 16, 2024, <u>see</u> Elec. Clerk's Notes [Doc. No. 163], and motions in limine must be filed by March 14, 2024, <u>see</u> Procedural Order Re: Pretrial/Trial 2 [Doc. No. 162], Roller Bearing first raised the issue with the court in March 2023, and Raytheon did not object to the court deferring the issue until after the summary judgment decision was issued, to the court's

8

schedule for briefing the motion, or to the pretrial schedule that was set after the summary judgment issued. Accordingly, the court does not find that these two factors weigh against Roller Bearing.

In sum, where the court finds that the Macaulay factors either weigh against granting Roller Bearing's motion for leave to disclose a new rebuttal expert or are neutral, the motion is DENIED.

### III.     Conclusion

For the foregoing reasons, Roller Bearing's Motion for Leave to Disclose Rebuttal Expert [Doc. No. 168] is DENIED.

IT IS SO ORDERED

January 31, 2024                                         /s/Indira Talwani
                                                         United States District Judge