**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ROLLER BEARING COMPANY OF AMERICA, INC., | : : : | Civil Action No. 1:20-cv-10889-IT |
| Plaintiff, | : : : | |
| v. | : : : | |
| RAYTHEON COMPANY, | : : : | |
| Defendant. | : : : | June 3, 2024 |

## JOINT PRE-TRIAL MEMORANDUM

Plaintiff Roller Bearing Company of America, Inc. ("RBC") and Defendant Raytheon Company ("Raytheon") hereby submit their joint pre-trial memorandum pursuant to the February 20, 2024 Amended Procedural Order Re: Pretrial/Trial. (Doc. No. 185.)

**I.    Concise Summary of Evidence That Will Be Offered**

    **A.    Statement of RBC**

        **1.    Liability**

Plaintiff Roller Bearing Company of America, Inc. ("RBC") will present evidence to show that, in April 2015, RBC's team of highly skilled engineers and bearing designers worked with Defendant Raytheon Company ("Raytheon"), to solve a problem Raytheon had with the wings of its newly-developed guided munition, Small Diameter Bomb II ("SDB II"). More particularly, RBC will present evidence that its engineers designed a unique, customized rod end bearing for application in the SDB II wing assembly and submitted its design to Raytheon with markings, pursuant to the Proprietary Information Agreement ("PIA") between RBC and Raytheon, claiming the design as its proprietary trade secret information. RBC will prove that the unique combination

of bearing design features and properties provided by Scott McNeil when RBC designed the requested rod end bearing for Raytheon constituted a trade secret.

The evidence will show that RBC's design constituted a protectable trade secret and that RBC took appropriate and adequate steps to maintain the secrecy of that trade secret. The evidence also will show that Raytheon was not capable of designing its own version of the rod end bearing, and that the rod end bearing designed and manufactured by RBC, in fact, successfully solved Raytheon's problem with the wing deployment of the SDB II, demonstrating that RBC's trade secret had value by not being generally known or available to the public.

The evidence will show that, while Raytheon incorporated RBC's proprietary design into its drawings for the SDB II wing assembly and initially respected RBC's claim to its trade secret rod end design, Raytheon then allowed its third party vendors, Multicut North America, Inc. and Multicut A/S (collectively, "Multicut"), to distribute the Raytheon drawing – with RBC's trade secrets – to RBC's competitors in order to obtain the rod ends more cheaply. The evidence will also demonstrate that, after RBC raised its concerns about misappropriation with Multicut, who then shared RBC's claims with Raytheon, Raytheon did nothing to stop Multicut from continuing to use RBC's trade secret design unlawfully. To the contrary, the evidence will show that Raytheon provided assurances to Multicut – in 2017 and 2018 – that the rod end design consisted of features already publicly known and could not be a trade secret, that RBC had no proprietary rights in the rod end design, and that Multicut could distribute the drawing with the design to any vendor it wanted.

The evidence will show that Raytheon acted in breach of its obligations to RBC under the PIA to take steps to protect RBC's trade secrets as though those secrets were Raytheon's own, and that Raytheon, as a result, misappropriated RBC's trade secrets, causing financial harm to RBC

when Multicut was able to locate an alternative source that would produce the proprietary design for less than a third of the price RBC had charged by using RBC's trade secret provided by Multicut. The evidence will further demonstrate that Raytheon's conduct was willful and intentional.

### 2. Damages

RBC will introduce evidence of lost profits it suffered as a result of Raytheon's breach and misappropriation. More particularly, RBC will offer the testimony of its damages expert, Chris Spadea, demonstrating that RBC lost profits of at least $1.7 million in sales of its proprietary rod end between August 2017 and December 2024, which is the end date for the long-term agreement Raytheon has with Multicut to supply the wing assemblies for the SDB II.

RBC will also introduce evidence that Raytheon acted willfully and intentionally in disregarding RBC's trade secrets and its claims of misappropriation. More particularly, RBC will offer testimony and evidence that, after RBC informed Multicut of its claims of misappropriation, in 2017 and again in 2018, Raytheon assured Multicut that RBC had no trade secrets in the drawing for the subject rod end and encouraged Multicut to continue sourcing the rod end from a source that was utilizing RBC's trade secrets to manufacture and sell the rod ends at less than a third of the price that RBC charged. Based on the evidence of Raytheon's willfulness in coordinating with Multicut to violate RBC's rights and disregard RBC's claims of misappropriation, RBC seeks to double its actual damages under both state and federal trade secrets laws. RBC also seeks recovery of its attorneys' fees and costs.

Lastly, RBC seeks a permanent injunction preventing Raytheon from utilizing or causing to be utilized RBC's proprietary rod end design for any purposes.

### B. Statement of Raytheon

RBC brought suit against Raytheon for alleged misappropriation of an undefined trade

secret. RBC claims Raytheon violated the parties' proprietary information agreement ("PIA") and misappropriated RBC's undefined trade secret by sharing a Raytheon Vendor Item Control Drawing ("VICD") (a drawing specifically used for procuring a part from multiple vendors) marked "Raytheon Proprietary" with its suppliers—who were also subject to a proprietary information agreement—and by failing to intervene and prevent the suppliers from sharing the Raytheon drawing with anyone else.

Raytheon provides winged munitions for the Department of Defense's StormBreaker, Small Diameter Bomb II ("SDB II") program. In early 2015, Raytheon forwarded a VICD with a design created by Raytheon's engineers based in part on a publicly-available catalog from New Hampshire Ball Bearing, a competitor of RBC's. Because RBC did not have a similar part in stock, RBC modified the VICD with common sense suggestions based on publicly-available information and to conform with parts RBC had in stock. Raytheon accepted some of the proposed changes, rejected others, and modified its VICD. RBC approved the final VICD, which stated "Raytheon Proprietary."

As RBC was fully aware at the time, Raytheon forwarded the final VICD to its then supplier Klune Industries, Inc. ("Klune"), and later, to its new supplier Multicut Denmark A/S ("Multicut"). Each supplier was subject to a PIA. It was not until RBC failed to secure a long-term agreement with Multicut due to its own inflated pricing that it accused *Multicut* of infringing some unidentified intellectual property. It was several more years before RBC made any claims against Raytheon.

RBC's claims fail for numerous reasons. RBC cannot define its alleged trade secret. Rather, the multiple combinations RBC points to are obvious combinations of well-known rod end bearing properties, design features, or scientific principles—most of which, not incidentally, were

proposed or defined by Raytheon. Additionally, RBC knew that the information it now claims to be a trade secret was unprotectible, or at a minimum failed to exercise reasonable care to protect its undefined trade secret, by approving the Raytheon drawing that supposedly contained its alleged trade secret was a vendor item control drawing and marked Raytheon Proprietary—without any mention of RBC's alleged proprietary information. Finally, any claims that RBC that might have to ownership in the rod end bearing design are either untimely or evaporated long ago, when RBC sold the rod end bearings to Raytheon without restriction and pursuant to Raytheon's standard terms and conditions.

**II.     Facts Established by Pleadings or by Stipulations or Admissions of Counsel**

The parties do not stipulate to any facts to be presented to the jury by the Court.

**III.    Any Contested Issues of Fact**

    **A.     RBC**

1. Whether RBC's changes to the original rod end drawing provided to RBC by Raytheon included a unique and/or nonobvious combination of rod end design features?

2. Whether RBC's changes to the original rod end drawing provided to RBC by Raytheon were identified as proprietary information according to the requirements of the PIA?

3. Whether RBC's changes to the original rod end drawing provided to RBC by Raytheon included a combination of features that was publicly known?

4. Whether RBC's changes to the original rod end drawing provided to RBC by Raytheon conferred a competitive advantage to RBC?

5. Whether RBC took reasonable steps to preserve the secrecy of its rod end bearing design?

6. Whether RBC did anything in 2015 to waive or otherwise forfeit its proprietary rights to its rod end bearing design?

7. Whether Raytheon breached its obligations under the PIA by failing to adequately protect RBC's trade secrets when sharing the drawing of the subject rod ends with Multicut?

8. Whether Raytheon's conduct after learning of and disregarding RBC's claims in July 2017 was done with intent to cause injury or with intentional disregard for the possibility that the conduct will cause injury?

9. Whether Raytheon's conduct was motivated by a desire to gain an unfair advantage or otherwise had the effect of injuring RBC's right to the benefits of the PIA?

10. Whether RBC lost profits as a result of Raytheon's misappropriation of RBC's trade secrets?

11. On what date did RBC know or reasonably should have known that Raytheon had misappropriated its trade secret?

**B.    Raytheon**

1. What RBC claims as its trade secret in this case.

2. Whether the combination of four or six features for ball and housing material, solid film lubrication, passivation, minimum load ratings, and maximum radial play shown on the final VICD was publicly-available and obvious.

3. Whether RBC is the sole owner of any alleged trade secret, as Raytheon suggested at least some of the alleged combination.

4. Whether RBC had knowledge, or should have known, that the final VICD was intended for third-parties.

5. Whether VICD is a defined term of art in the aerospace industry for drawings used to shop interchangeable items within specified limits.

6. Whether RBC failed to protect the secrecy of its alleged trade secret.

7. Whether RBC shipped the first order of rod end bearings to Raytheon on May 18, 2015 or May 19, 2015.

**IV.   Jurisdictional Questions**

None.

**V.   Questions Raised by Pending Motions (Other than Motions *in Limine*)**

There are no pending motions other than motions *in limine*.

**VI.   Issues of Law**

   **A.   RBC**

      **1.   General Issues**

      1. Whether RBC's rod end design constitutes a protectable trade secret.

         - Can a unique combination of known features constitute a trade secret? Gillette Co. v. Provost, 2017 Mass. Super. LEXIS 38 *6 (Apr. 19, 2017); Iconics, Inc. v. Massaro, 266 F. Supp. 3d 449, 454 (D. Mass. 2017) ("A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable trade secret.").

         - Did RBC take steps required under the PIA to protect the confidentiality and secrecy of the rod end design? FabriClear, LLC v. Harvest Direct, LLC, 651 F. Supp. 3d 406, 411 (D. Mass. 2023) (plaintiff must show it

      has complied with the contract and preformed its own obligations under it);

- Did RBC take steps required under trade secret laws to protect the confidentiality and secrecy of the rod end design? *Diomed, Inc. v. Vascular Solutions, Inc.*, 417 F. Supp. 2d 137, 144 (D. Mass. 2006).

- Did RBC demonstrate the trade secret design had value or gave RBC a competitive advantage by not being generally known to others? *Builder Services Grp., Inc. v. Harkins*, 2023 U.S. Dist. LEXIS 125843 *15 (July 21, 2023), quoting *TouchPoint Solutions, Inc. v. Eastman Kodak Co.*, 345 F. Supp. 2d 23, 29 (D. Mass. 2004) ("A trade secret need not have the novelty that is requisite for a patent, it must only confer a competitive advantage on its possessor.").

2. If RBC had a trade secret in the rod end design, whether Raytheon was obligated under the PIA and trade secret laws to protect RBC's trade secret design. M.G.L. c. 93 § 42(2); *Diomed, Inc. v. Vascular Solutions, Inc.*, 417 F. Supp. 2d 137, 146 (D. Mass. 2006) ("Where the facts demonstrate that a disclosure was made in order to promote a specific relationship . . . the parties will be bound to receive the information in confidence." (Internal quotation marks omitted.)); *Jet Spray Cooler, Inc. v. Crampton*, 385 N.E.2d 1349, 1354 (Mass. 1979) ("The essence of an action for the wrongful use of trade secrets is the breach of the duty not to disclose or to use without permission confidential information acquired from another."); *FabriClear, LLC v. Harvest Direct, LLC*, 651 F. Supp. 3d 406, 411 (D. Mass. 2023).

3. Whether Raytheon breached its obligations under the PIA by providing the Final Drawing to Multicut without taking adequate steps to maintain the confidentiality of RBC's trade secret design contained therein. *Diomed, Inc. v. Vascular Solutions, Inc.*, 417 F. Supp. 2d 137, 146 (D. Mass. 2006); *FabriClear, LLC v. Harvest Direct, LLC*, 651 F. Supp. 3d 406, 411 (D. Mass. 2023).

4. Whether Raytheon misappropriated RBC's trade secrets by allowing Multicut to distribute the Final Drawing to competitor bearing distributors and manufacturers without adequately protecting RBC's trade secrets. M.G.L. c. 93 § 42(2); *Diomed, Inc. v. Vascular Solutions, Inc.*, 417 F. Supp. 2d 137, 146 (D. Mass. 2006); *Jet Spray Cooler, Inc. v. Crampton*, 385 N.E.2d 1349, 1354-56 (Mass. 1979); *FabriClear, LLC v. Harvest Direct, LLC*, 651 F. Supp. 3d 406, 411 (D. Mass. 2023).

5. Whether Raytheon is liable to RBC for RBC's lost profits? *Jet Spray Cooler, Inc. v. Crampton*, 385 N.E.2d 1349, 1356 (Mass. 1979) ("[T]he plaintiff is entitled to the profit he would have made had his secret not been unlawfully used, but not less than the monetary gain which the defendant reaped from his improper acts.").

6. Whether Raytheon's conduct after learning of RBC's assertion of trade secret rights in the rod end design demonstrates Raytheon's willfulness, subjecting Raytheon to an award of punitive damages? 18 U.S.C. § 1836(b)(3)(C); M.G.L. ch. 93 § 42B; *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 2024 U.S. Dist. LEXIS 65395 *27-28 (Apr. 10, 2024)("[E]xemplary damages and

attorneys' fees are available where the misappropriation was 'willful,' i.e., done with actual or constructive knowledge of its probable consequences, and 'malicious,' i.e., done with intent to cause injury.").

7. Whether Raytheon should be enjoined from utilizing RBC's trade secret design without just compensation to RBC going forward? *Molinaro v. Burnbaum*, 1977 U.S. Dist. LEXIS 16547 (D. Mass. 1977) (monetary and injunctive relief are available to plaintiff in misappropriation of trade secrets cases)

**2.    Evidentiary Issues**

See Motions in Limine; see objections to deposition designations; see objections to exhibits.

**B.    Raytheon**

1. Whether RBC has identified its alleged trade secret with reasonable particularity. M.G.L. ch. 93 § 42D.

2. Whether the alleged trade secret is a valid trade secret. 18. U.S.C. § 1839; M.G.L. ch. 93 § 42.

3. Whether the DTSA is applicable in this action, as the relevant events took place before the May 11, 2016 effective date. *Pawelko v. Hasbro, Inc.*, No. CV 16-00201-JJM, 2018 WL 6050618, at *6 (D.R.I. Nov. 19, 2018), *report and recommendation adopted*, No. CV 16-201-JJM-LDA, 2019 WL 259117 (D.R.I. Jan. 18, 2019).

4. Whether M.G.L. ch. 93 § 42(f) is applicable to RBC's claims as the pre-October 1, 2018 version of the statute did not expressly allow for recovery of attorneys' fees or punitive damages and limited exemplary damages to double damages

       not treble and RBC only alleged misappropriation prior to October 1, 2018 M.G.L. ch. 93 § 42 (1967).

5. Whether Raytheon's standard terms and conditions apply.

6. Whether Raytheon misappropriated the alleged trade secret.

7. Whether Raytheon breached the PIA.

8. Whether RBC's proposed damages amount is cut-off as of September 29, 2020 and determined with reasonable certainty.

9. Whether RBC timely filed its claims.

## VII. Requested Amendments to the Pleadings

### A. RBC

RBC seeks to eliminate from the allegations in the Amended Complaint references to the bushings it also manufactured and sold to Raytheon in connection with the SDB II. RBC's claims are limited to Raytheon's misconduct regarding RBC's proprietary rod end bearing design.

### B. Raytheon

Raytheon does not request any amendment to the pleadings.

## VIII. Any Additional Matters to Aid in the Disposition of the Action

**Courtroom etiquette.** Raytheon wishes to discuss the Court's preference for lawyers standing at the lectern during witness examinations or, as Raytheon prefers, whether lawyers may move from the lectern during witness examinations.

**Order of witnesses.** It is Raytheon's position that the parties should notify each other of the names and order of witnesses who will testify in advance of their being called. Raytheon requests RBC provide a good-faith list of the order of their witnesses (including a good-faith estimate of time on direct) no later than August 12, 2024. Raytheon agrees provide a good faith

estimate of time on cross for Raytheon's witnesses by August 14, 2024 and to provide its good-faith list of the order of its witnesses (including a good-faith estimate of time on direct) by August 16, 2024. Raytheon also asks that RBC provide its good-faith estimate of time on cross for Defendant's witnesses by August 20, 2024. Raytheon intents to work cooperatively with schedule changes due to witness availability. Moreover, Raytheon requests that the parties agree to provide a daily update of the order of witnesses expected for the following two trial days.

**IX.     Estimate of the Probable Length of Trial**

    **A.     RBC**

RBC anticipates the matter will require 10 trial days in addition to empanelment.

    **B.     Raytheon**

Raytheon anticipates a two-week, nine-day trial[1] including jury selection and deliberation. In the interest of speed and efficiency, Raytheon proposes an evenly-split timed trial and wishes to discuss the details at the June 12, 2024 Final Pretrial Conference.

---

[1] September 2, 2024 is Labor Day, a legal holidays under Fed. R. Civ. P. 6(a)(6)(A).

Date:  June 3, 2024

| RAYTHEON COMPANY<br>By its attorneys, | ROLLER BEARING COMPANY OF AMERICA, INC. |
|---|---|
| /s/ *Elizabeth A. Alquist*<br>Elizabeth A. Alquist (admitted *pro hac vice*)<br>John W. Cerreta (admitted *pro hac vice*)<br>Woo Sin Sean Park (admitted *pro hac vice*)<br>Emily Ferriter Russo (admitted *pro hac vice*)<br>Day Pitney LLP<br>Goodwin Square<br>225 Asylum Street<br>Hartford, CT 06103-1212<br>Tel: (860) 275-0100<br>Fax: (860) 275-0343<br>Email: *eaalquist@daypitney.com*<br>       *jcerreta@daypitney.com*<br>       *wpark@daypitney.com*<br>       *eferriterrusso@daypitney.com*<br><br>Jonathan I. Handler<br>BBO# 561475<br>DAY PITNEY LLP<br>One Federal Street<br>Boston, MA 02110<br>Tel: (617) 345-4600<br>Fax: (617) 345-4745<br>Email: *jihandler@daypitney.com* | /s/ *James F. Radke*<br>James F. Radke, BBO# 667299<br>MURTHA CULLINA LLP<br>99 High Street, 20th Floor<br>Boston, MA 02110<br>Tel: (617) 457-4130<br>jradke@murthalaw.com<br><br>Lorey Rives Leddy (PHV)<br>Richard J. Basile (PHV)<br>Julie A. Lavoie (PHV)<br>Daniel J. Krisch (PHV)<br>MURTHA CULLINA LLP<br>107 Elm Street, 11th Floor<br>Stamford, CT 06902<br>Tel: (203) 653-5400<br>lleddy@murthalaw.com<br>rbasile@murthalaw.com<br>jlavoie@murthalaw.com<br>dkrisch@murthalaw.com<br><br>Denise L. Plunkett, BBO# 568133<br>AXINN, VELTROP &<br>HARKRIDER LLP<br>114 West 47th Street<br>New York, NY 10036<br>Tel: 212-728-2231<br>Fax: 212-728-2201<br>dplunkett@axinn.com<br><br>*Attorneys for Plaintiff* |